**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **CRIMINAL ACTION** |
| | : | **No. 20-cr-00045** |
| **v.** | : | |
| | : | |
| **ABDUR RAHIM ISLAM** | : | |
| **SHAHIED DAWAN** | : | |
| **KENYATTA JOHNSON** | : | |
| **DAWN CHAVOUS** | : | |
| Defendants. | : | |

McHUGH, J.                                                                                           **January 29, 2021**

## MEMORANDUM

### I.        Introduction

This is a prosecution arising out of alleged public corruption.  The centerpiece of the Indictment, set forth in Count One, is a charge of a RICO Conspiracy involving Defendants Abdur Islam and Shahied Dawan.  The indictment contains twenty-two counts.  Most of the counts set forth predicate crimes including honest services wire fraud, use of an interstate facility to commit racketeering, wire fraud, and tax fraud.  Defendant Kenyatta Johnson, a Philadelphia City Councilman, and his wife Dawn Chavous are charged in only two out of those counts: Honest Services Wire Fraud in violation of 18 U.S.C. §§ 1343 and 1346.  *See* Indictment, ECF 1 at 31-33.  Significantly, Defendants Johnson and Chavous are not charged under Count One as members of the RICO Conspiracy.  *Id.* at 2-3.

Johnson and Chavous ("Defendants") now jointly move to sever the two counts in which they are charged, Counts Nine and Ten, from the rest of the case, arguing both that they were

improperly joined in the first instance, and that joinder will highly prejudice them.  ECF 46. Although I agree with the Government that all Defendants were properly joined in this case, I agree with Johnson and Chavous that a joint trial of these counts would be unduly prejudicial.  I will therefore grant the Motion to Sever.

## II.      Factual Background

The Indictment alleges that Defendants Islam and Dawan ran Universal Community Homes (UCH) and Universal Education Companies (UEC), entities dedicated to real estate development and to operations for charter schools respectively.  *See* Indictment at 1-2.  Islam and Dawan are alleged to have bribed a member of the Milwaukee Public School Board, Mr. Michael Bonds, in return for votes in support of expanding their charter schools, and favorable leases for the schools.  *Id.* at 19-20.  The alleged conspiracy with Mr. Bonds is charged as a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) in Count One and forms the basis for parts of Counts Two through Seven, Count Eight, Counts Eleven through Sixteen and Counts Seventeen through Twenty-Two.  Mr. Bonds was charged separately and pleaded guilty before this Court.

Counts Nine and Ten of the Indictment also allege that Defendant Kenyatta Johnson, a Philadelphia City Councilmember, exercised a traditional power known as councilmanic prerogative to benefit Islam and Dawan in two real estate ventures.  *Id.* at 22-23; 32.  The Indictment alleges that Islam and Dawan bribed Johnson through his wife, Dawn Chavous, by virtue of her position as a consultant for Universal companies.  *Id.*

While trial was scheduled to begin in January 2021, trial has now been delayed because of the COVID-19 pandemic.  *See* ECF 68.

### III.    Defendants were properly joined under FRCP 8

Johnson and Chavous first argue that they were improperly joined as defendants under Rule

8 of the Federal Rules of Criminal Procedure, which provides:

> The indictment or information may charge 2 or more defendants if they are alleged
> to have participated in the same act or transaction, or in the same series of acts or
> transactions, constituting an offense or offenses. The defendants may be charged in
> one or more counts together or separately. All defendants need not be charged in
> each count.

The Third Circuit has held that Rule 8 "permits joinder of defendants charged with

participating in the same racketeering enterprise or conspiracy, even when different defendants are

charged with different acts**,** so long as indictments indicate all the acts charged against each joined

defendant (even separately charged substantive counts) are charged as racketeering predicates or

as acts undertaken in furtherance of . . . a commonly charged RICO enterprise or conspiracy."

*United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991).

Defendants argue that there is no "transactional nexus" connecting them to the other

defendants, relying on *United States v. Jimenez*, 513 F.3d 62 (3d Cir. 2008).  There, the Court of

Appeals held that "[i]t is not enough that defendants are involved in offenses of the same or similar

character; there must exist a transactional nexus in that the defendants must have participated in

the same transaction, or in the same series of acts or transactions."  *Id.* at 82-83 (internal citations

omitted).  When co-defendants are all charged as members of a RICO Conspiracy, the Third

Circuit held in *Eufrasio* that such allegations of common conspiracy provides the required

transactional nexus: "Joinder of a conspiracy count and substantive counts arising out of the

conspiracy is permitted since the claim of conspiracy provides a common link, and demonstrates

the existence of a common scheme or plan."  935 F.2d at 567 (internal alterations omitted) (quoting

*United States v. Somers*, 496 F.2d 723, 729-30 (3d Cir. 1974).

Here, Johnson and Chavous are not charged as members of the RICO conspiracy.  But *Eufrasio* makes clear that their joinder remains proper where defendants are alleged to be part of a "commonly charged RICO enterprise" **or** where the acts charged "are charged as racketeering predicates." 935 F.2d at 567.  Here, the charges against Johnson and Chavous, Honest Services Wire Fraud, are charged as racketeering predicates.  *See* Indictment at 22-23.  Joinder under Rule 8 is therefore proper.

### IV.    Counts Nine and Ten Should be Severed under Rule 14(a)

Johnson and Chavous further argue that even if they were properly joined, Counts Nine and Ten should be severed under Federal Rule of Criminal Procedure 14 because they will be unduly prejudiced by a joint trial.  Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Where defendants show prejudice, the court must consider the proper remedy.  "Rule 14 does not require severance" but instead "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993); *see id.* at 539 (noting that "limiting instructions [] often will suffice to cure any risk of prejudice."). Courts should grant severance where "there is a serious risk" that a joint trial would compromise the rights of a defendant or that a jury would be prevented "from making a reliable judgment about guilt or innocence."  *Id*. at 539.  For example, "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone" is admitted, this can create such a risk. *Id.* Similarly, "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" presents a risk. *Id.*

There are two bases on which severance is merited in this case, and which distinguish this case from those where severance was properly denied:  (1) Johnson and Chavous are not charged as members of the RICO conspiracy, and (2) highly prejudicial evidence would likely not be admissible against them in a severed trial. First, because they are not charged as members of the underlying conspiracy, considerations of judicial economy do not factor here as they do in many other RICO cases. Second, Michael Bonds has pleaded guilty to accepting bribes from Islam and Dawan in Milwaukee, and is likely to testify against those Defendants for charges related to that bribery scheme. This conduct is so similar to that charged against Johnson and Chavous that a jury in a joint trial would be unable to compartmentalize the evidence and the testimony would be unduly prejudicial to the Defendants.

### A.  Johnson and Chavous Are Not Charged as Members of the RICO Conspiracy

The reasons to favor a joint trial increase when all co-defendants are charged as members of a conspiracy, especially in terms of judicial economy, as the existence of the RICO enterprise will be relevant in each trial.  *See United States v. Urban*, 404 F.3d 754, 775-76 (3d Cir. 2005) (upholding denial of severance where plumbing inspectors all charged as part of RICO conspiracy for accepting "tips" in exchange for favorable inspections);  *Eufrasio*, 935 F.2d at 559 (upholding denial of severance and noting that "evidence of other criminal activities engaged in" by the criminal enterprise "would have been admitted in separate trials" as "evidence of the underlying RICO enterprise.").  A second reason to conduct a joint trial is to avoid the "scandal of inconsistent verdicts," and a joint trial of multiple members of a conspiracy helps to avoid this. *See Urban*, 404 F.3d at 775.

Johnson and Chavous argue that since they are not charged as members of the RICO conspiracy in Count One, none of these factors merit a joint trial.  I agree that these considerations

of judicial economy are not present here, and that Defendants' case is distinct from *Urban* and *Eufrasio*, especially when weighed against the serious risk of prejudice, discussed below.

### B.  Highly Prejudicial Evidence Will be Impossible for a Jury to Compartmentalize and Would Not be Admissible in a Severed Trial

The Third Circuit has characterized the relevant inquiry for severance as "whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence." *Eufrasio*, 935 F.2d at 568 (quoting *United States v. De Peri*, 778 F.2d 963, 984 (1985)); *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) ("The issue is . . . whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.") (internal quotations omitted).

Relevant to this inquiry is whether evidence admissible against one defendant would be inadmissible against another in a severed trial.  The risk of prejudice is especially high "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted" and when evidence "that is probative of a defendant's guilt but technically admissible only against a codefendant" is admitted.  *Zafiro*, 506 U.S. at 539. The Court noted that the risk presented by this type of evidence "is heightened" when "many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Id.*; *see also id.* at 544 (Stevens, J., concurring) ("[T]he Court should be mindful of the serious risks of prejudice and overreaching that are characteristic of joint trials, particularly when a conspiracy count is included in the indictment.")

The Government argues that severance is not warranted here, and that Johnson and Chavous can at best demonstrate that there is more evidence against their co-defendants than against them.  The Third Circuit has consistently held that district courts may properly deny severance in conspiracy cases where the quantity of evidence is different, and where some defendants seem to be "guiltier" than others.  *See United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (noting that "there are many criminal cases" where "all the evidence is not germane to all the counts against each defendant" and that "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than evidence against the moving party.") (citing *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989) and *Somers*, 496 F.2d at 730).

Defendants argue that the government is almost certain to call Mr. Michael Bonds as a witness for the counts related to the alleged bribery scheme in Wisconsin.  As set forth above, Mr. Bonds has pled guilty to misusing his authority as President of the Milwaukee Board of School Directors as a result of bribes he allegedly accepted from Islam and Dawan.  Defendants argue that the bribery involving Islam and Dawan admitted by Bonds is so similar to the conduct of which they are accused that a jury will be unable to compartmentalize the evidence, which is irrelevant to their guilt on Counts Nine and Ten.

I agree.  Johnson and Chavous are not alleged to have known about the bribes paid to Mr. Bonds in Wisconsin.  Testimony related to the bribery of Mr. Bonds would not be admissible in a severed trial of only Counts Nine and Ten.[1]  In a joint trial, although a jury could be instructed to ignore Mr. Bonds' testimony as it relates to Counts Nine and Ten, the prejudice is so high that

---

[1] As discussed at the Motions Hearing, the company's financial situation in Wisconsin likely will be relevant to Islam and Dawan's motive and intent with the conduct alleged in Counts Nine and Ten. *See* Indictment ¶ 17, ECF 1 (quoting an email from Dawan to Islam noting financial losses in Wisconsin and stating that "a sale of the Royal Theater could close the gap.").  Nevertheless, the alleged bribery itself would likely not be admissible.

defendants would likely be deprived of a fair trial.  *See United States v. Dougherty et al.*, No. 19-64, 2020 WL 6395464, at \*2 (E.D. Pa. Nov. 2, 2020) (Schmehl, J.)  (holding that where some defendants are not alleged to have participated in or known about other conspiracies, the "risk of 'guilty by association' and the defendants' different degrees of culpability" shows that the risk of prejudice is "so high that defendants would likely not receive a fair trial.");  *see also United States v. Bryant*, 556 F. Supp. 2d 378, 438 (D.N.J. 2008) (granting motion to sever fourteen out of twenty counts where one defendant was not alleged to have known about the conduct alleged in the other counts and where there was a risk of prejudicial "spillover.")

The Government tries to characterize Defendants' argument as seeking to avoid the "provocative or sensational nature" of the Bonds testimony. *See* Gov. Response, ECF 56. The Government is correct that potentially sensational evidence is not enough to warrant severance. *See Eufrasio*, 935 F.2d at 568 (murder charge against one defendant did not warrant severance from other non-involved co-defendants).  But that mischaracterizes the Defendants' argument; they are not worried that Bonds's unlawful conduct is inflammatory, but rather that it is likely to unfairly skew the jury's determination of guilt.  Mr. Bonds has pleaded guilty to doing with Islam and Dawan exactly what Johnson and Chavous are alleged to have done.  The risk created by that type of spillover evidence is one of the risks highlighted by the Supreme Court.  *See Zafiro*, 506 U.S. at 539 ("[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty" and could warrant severance).[2]

Further, the amount of evidence and number of charges in this case increases the risk that a jury will be unable to properly compartmentalize evidence.  The Government has produced "more than three million pages of documents" in February 2020 and provided "tens of thousands

---

[2] Conceptually, there is a parallel with  Federal Rule of Evidence 404(b)(1) prohibiting evidence of prior bad acts as proof of future conduct.

of additional documents as well as hard drives" in July 2020.  *See* ECF 56 at 37-38.  A joint trial is expected to last at least four weeks.  A jury would be required to ignore vast amounts of evidence and potentially weeks' worth of testimony in narrowing its focus to a separate consideration of Counts Nine and Ten.  This is untenable.  *See Dougherty*, 2020 WL 6395464, at *3 (holding that a reasonable jury could not, even with jury instructions, "ignore weeks' worth of evidence against some defendants while simultaneously using that evidence against other defendants in coming to multiple verdicts.").

The government cites *United States v. Christmas*, No. 04-611-3, 2005 WL 713341 (E.D. Pa. Mar. 28, 2008), where severance was denied for a defendant charged only with a RICO predicate offense but not charged as part of the larger RICO conspiracy. *Id.* at *2.  The defendant there was one of seven defendants, and was charged in seven out of forty-eight total counts.  *Id.* at *1. In denying severance, the court reached three conclusions: that the defendant could not "identify a specific trial right that would be negatively impacted," that "the charges against him [could] easily be compartmentalized by a reasonable jury," and that "considerations of judicial economy weigh[ed] heavily in favor of a joint trial due to significant overlapping evidence." *Id.* at *2.

In contrast, Defendants here have enumerated rights that would be negatively impacted by a joint trial.  They have far less alleged involvement in the overall case than the defendant in *Christmas.*  Although some evidence will overlap, highly prejudicial evidence would not be admissible in a trial solely of Counts Nine and Ten.  And although we rely on jurors to compartmentalize and follow instructions, the relevant evidence here carries an unacceptably high risk of prejudice.

Finally, with the pandemic, it is not  clear that judicial economy is invariably served by holding one combined longer trial as compared to two shorter ones, given the difficulty in securing jurors.  And the length of time citizens are asked to serve as jurors is a related concern, albeit one offset by the fact that at least some witnesses will likely have to testify twice.

### V. Conclusion

Defendants are properly joined under Federal Rule of Criminal Procedure 8(b). But under Rule 14(a), they have shown a risk of prejudice that would be difficult  to cure with jury instructions, especially given the volume of evidence and the factually similar and prejudicial nature of some evidence.

"[A]n important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence." *Zafiro*, 506 U.S. at 540 (quoting *Bruton*, 391 U.S. 123, 131 n.6 (1968)). Looking at the record as a whole, I am persuaded that separate trials are warranted. Counts Nine and Ten are accordingly severed. An appropriate order will follow.

   /s/ Gerald Austin McHugh
United States District Judge