**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| | : | **No. 20-cr-00045** |
| **v.** | : | |
| | : | |
| **ABDUR RAHIM ISLAM** | : | |
| **SHAHIED DAWAN** | : | |
| **KENYATTA JOHNSON** | : | |
| **DAWN CHAVOUS** | : | |
| **Defendants.** | : | |

**McHugh, J.**                                             **January 29, 2021**

## MEMORANDUM

Defendants Kenyatta Johnson and Dawn Chavous are charged with Honest Services Wire

Fraud in violation of 18 U.S.C. § 1343 and § 1346.  The Government contends that Mr. Johnson,

as a member of the Philadelphia City Council, was motivated to use his "councilmanic

prerogative" to approve of land use within his district in ways favorable to co-defendants Abdur

Rahim Islam and Shahied Dawan because of a consulting contract they issued to Johnson's wife,

Dawn Chavous, which required her to perform little or no work.  Johnson and Chavous have filed

a joint motion (ECF 47) to compel the production of the grand jury instructions relating to Counts

Nine and Ten of the Indictment, which the Government opposes (ECF 56).[1]

Grand jury proceedings are entitled to a strong presumption of regulatory.  *In re Grand*

*Jury Proceedings*, 632 F.2d 1033, 1041 (3d Cir. 1980).  Courts may order disclosure of grand jury

matters if a defendant "shows that a ground may exist to dismiss the indictment because of a matter

that occurred before the grand jury."  FED. R. CRIM. P. 6(e)(3)(E)(ii).  The moving party must show

---

[1] While I decide this Motion on its merits, I note that at oral argument, the Government stated, in the context of discussing a Motion to Dismiss, that "[i]f the Court would like to review the entirety of the [grand jury] transcript, the Government is more than happy to provide it." Tr. Mot. Hearing at 64, ECF 70.

"a particularized need for that information which outweighs the public interest in secrecy." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)). "Once such a need is shown" the district court weighs "the competing interests" and may "order so much disclosure as needed for the ends of justice." *Id.* (citing *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 (3d Cir. 1982). The district court "necessarily is infused with substantial discretion" in its analysis. *Id.* (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223 (1979)); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966) (noting that "developments" allowing for increased disclosure of grand jury materials "are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.").

For three reasons, I am persuaded that the moving Defendants have met the standard here. First, the Indictment alleges that Mr. Johnson performed "official acts" in exchange for payments, constituting Honest Services Wire Fraud. *See* Indictment at 32, ECF 1. The law surrounding Honest Services Wire Fraud has changed substantially in recent years. In particular, the definition of what constitutes an "official act" for purposes of bribery has been narrowed by the Supreme Court, as further elaborated upon by the Third Circuit. *See McDonnell v. United States*, 136 S. Ct. 2355 (2016); *United States v. Fattah*, 914 F.3d 112 (3d Cir. 2019). Standing alone, the fact that the law in this area remains in flux provides a strong basis for reviewing the determination the grand jury was asked to make.

The second reason stems from the nature of the allegations. Councilman Johnson is alleged to have committed an "official act" by "advis[ing] the [Philadelphia Redevelopment Authority] that he would not support the City of Philadelphia's attempt to revert the properties at

13th and Bainbridge . . . effectively halting the reversion process." *See* Indictment at 23; 32, ECF 1. This action, known as the exercise of councilmanic prerogative, does not occur on the floor of City Council or as any part of its proceedings. It is, as described by the Pew Charitable Trusts in a 2015 report dedicated to the subject, an exercise "grounded in legislative tradition rather than law."[2] It is the type of activity  that has been carefully scrutinized by courts in determining the scope of criminal liability.   The tension is illustrated by  the Supreme Court's discussion in *McDonnell*, where it held that "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so) — without more — does not fit [the] definition of 'official act.'" 136 S. Ct. 2355 at 2372.  In contrast, "if a public official uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official, that too can qualify as a decision or action." *Id.* at 2370.  At a minimum, Defendants are correct that a grand jury is necessarily required to draw fine distinctions in deciding whether to indict, rendering the instructions as to the law of particular importance.

Finally, Defendants focus on one of the allegations of the Indictment as potentially troublesome.  The Indictment alleges that Johnson "attended a refresher course on Ethics Training for members of Philadelphia City Council, which specifically addressed conflicts of interest." Indictment at 13.  As Defendants correctly observe, honest services fraud must be established through bribery or kickbacks;  conflicts of interest will not suffice.  *See Skilling v. United States*, 561 U.S. 358, 410 (2010) (holding that prosecutions under 18 U.S.C. § 1346 must exclude the "amorphous category" of conflict-of-interest cases);  *see also Kelly v. United States*, 140 S. Ct.

---

[2] *See Philadelphia's Councilmanic Prerogative: How it works and why it matters*, THE PEW CHARITABLE TRUSTS (July 2015), https://www.pewtrusts.org/-/media/assets/2015/08/philadelphia-councilmanic-report--with-disclaimer.pdf. The Report further describes the prerogative as being "rooted . . . in language within state law and the Philadelphia city charter that grants to the whole of council the authority over the sale of a large percentage of city-owned land." *Id.* at 3.

1565, 1574 (2020) ("Federal prosecutors may not use property fraud statutes to set standards of disclosure and good government for local and state officials.") (internal quotations omitted). The presence of such an allegation does not by itself suggest that the legal standard was not otherwise met, but it lends support to the other concerns Defendants advance.

Any disclosure must be weighed against the need for grand jury secrecy. Here, the impact on grand jury secrecy is minimal. The request is narrowly tailored as it is limited to instructions on just two counts. *See Douglas Oil Co.*, 441 U.S. at 222 (defendants seeking grand jury transcripts must show "that their request is structured to cover only material so needed."). The need for secrecy is lessened because the grand jury has completed its work. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940) ("[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."). And disclosure of grand jury instructions does not carry the same concerns as, for example, compelled disclosure of witness testimony. *See Douglas Oil Co.*, 441 U.S. at 222 (noting that by disclosing testimony given before the grand jury future witnesses "will consider the likelihood that their testimony may one day be disclosed to outside parties" and "[f]ear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.").[3] In this case, that concern is decreased further given that the Government stated at oral argument that "[a]ll of the portions of the grand jury transcripts have been produced in discovery in terms of witness testimony." Tr. Mot. Hearing at 72, ECF 70. Finally, to address any lingering concerns about secrecy of the grand jury proceedings, I will order that the instructions be

---

[3] As Defendants observe, several courts have held that a particularized need does not need to be shown in order to compel disclosure of grand jury instructions, as opposed to other grand jury materials. *See, e.g.*, *United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006) (holding that instructions "do not fall within the bar of Rule 6(e) because their disclosure would not reveal the substance or essence of the grand jury proceedings."). Courts in this Circuit have not adopted that argument, and my colleague Judge Surrick has rejected it outright. *See United States v. Chalker*, No. 12-0367, 2013 WL 4547754, at *6 n.7 (E.D. Pa. Aug. 27, 2013). Because I find that Defendants have shown a particularized need, there is no need to address that issue.

compelled for *in camera* review only.  *See Dennis*, 384 U.S. at 869 ("[W]hen disclosure is permitted, it is to be done 'discretely and limitedly.'") (quoting *Proctor & Gamble Co.*, 356 U.S. at 681);  *United States v. Smith*, 123 F.3d 140, 143-44 (3d Cir. 1997) (noting that where "grand jury secrets might be disclosed" "*in camera* review of the disputed material is necessary.").

Prosecutors understandably bridle at any suggestion a grand jury was improperly conducted.  There is no such implication as to able counsel for the Government here.  Rather, given the complexity of the law and the subtlety of the facts, reasonable minds might differ, warranting Defendants' request for early review.

An appropriate order will be issued.

/s/ Gerald Austin McHugh
United States District Judge